CASE 56—ACTION BY THE MT. CARMEL TELEPHONE CO. AGAINST THE
   MT. CARMEL & FLEMINGSBURG TELEPHONE CO. TO DETERMINE THE
   RIGHTS OF THE PARTIES AS TO THE OWNERSHIP OF CERTAIN PROP-
   ERTY.—JAN. 13.

# Mt. Carmel Tel. Co. v. Mt. Carmel & Flemingburg Tel. Co.

APPEAL FROM FLEMING CIRCUIT COURT—JAS. P. HARBESON, CIRCUIT
   JUDGE.

JUDGMENT FOR DEFENDANT. PLAINTIFF APPEALS. AFFIRMED.

PROPOSED  CORPORATION—SUBSCRIBERS—STATUS—PARTNERSHIP—RIVAL
   ORGANIZATIONS—PROPERTY—OWNERSHIP—DETINUE.

1. Subscribers to the stock of a proposed corporation, before they are incorporated, are partners in the proposed business.
2. Subscribers to a proposed corporation appointed a committee of nine to prepare proposed articles of incorporation. The committee being unable to agree, four refused to proceed, and reported back

to the subscribers, who agreed with them. The remaining five prepared articles of incorporation, and became plaintiff company. Thereafter the majority subscribers repudiated the action of the five members of the committee, executed articles of incorporation, and became defendant company. HELD, that the committee was merely the agent of the subscribers, and hence, when the articles prepared by the five were repudiated by the subscribers, the five were not authorized to proceed and bind the remaining subscribers by their incorporation proceedings.

3. Where prior to the incorporation of a telephone company the subscribers proceeded to purchase and construct poles, wires, etc., and thereafter a minority of their number were unable to agree as to the provisions of the corporation's charter, and thereupon organized plaintiff corporation adverse to defendant corporation subsequently organized by the balance of the subscribers, the title to the property became vested in defendant.

McCARTNEY, DEARING & GRANNIS, ATTORNEYS FOR APPELLANTS.

We submit that the facts on demurrer warrant the following premises:

1. That the parties acting together before incorporation were a partnership.

2. That the moment they ceased to be a partnership they became a corporation.

3. That as a partnership, or corporation, they at all times had the right to sue for their property.

4. As a necessary sequence, the moment they ceased to be a partnership and began an existence as a corporation, such a corporation had the right to bring any suit necessary to protect its life or property.

### AUTHORITIES CITED.

Twin Creek & Colmansville Turnpike Co. v. Lancaster, 79 Ky., 553; Lackey v. R. & L. Turnpike Co., 17 B. M., 44; Ky. Stat., sec. 542, 566; Gen. Stat., sec. 6, chap. 56; Walton v. Riley, 85 Ky., 414; P. & G. Turnpike Co. v. Babb, 88 Ky., 229; Brooksville R. R. Co. v. Byron, 50 S. W., 530; Thompson on Corp., vol. 1, secs. 1157, 1158, 501; Ky. Stat., 539, 540, 763, 555, 556; Hughes v. Bank of Somerset, 5 Lit., 45; Wright v. Shelby R. R. Co., 16 B. M., 7.

E. L. WORTHINGTON, J. H. POWER AND O. R. BRIGHT, ATTORNEYS FOR APPELLEE.

### POINTS AND AUTHORITIES.

A corporation formed under chapter 32, Kentucky Statutes,

Mt. 'Carmel Tel. Co. v. Mt. Carmel & Flemingsburg Tel. Co.

can not acquire a right to the possession of property and main-
tain an action therefor until it has elected a board of directors.
Ky. Stat., secs. 551, 541, 542; 6 Thompson on Corporations, sec.
7374; Angell & Ames (11th ed.), secs. 81, 369; Morawetz, vol. 1,
sec. 21; Thompson, vol. 1, sec. 52; Thompson, vol. 3, sec. 2969;
Thompson, vol. 6, secs. 7361, 7368, 7374; Thompson, vol. 7, sec.
8160; Civil Code, sec. 180; Ky. Stat., secs. 538, 576.

### CASES CITED.

Warring v. Arthur, 98 Ky., 34; Lail v. Mt. Sterling Coal Road
Co., 13 Bush, 34; Breathitt Coal, Iron and Lumber Co. v. Greg-
ory, 25 Ky. Law Rep., 1507.

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

Thirty-six citizens of Fleming county, desiring to incor-
porate themselves into a telephone company, and to build
and operate a telephone line between Mt. Carmel and Flem-
ingsburg, subscribed various sums from $25 to $5 each for
the capital stock of the corporation afterwards to be or-
ganized; the total amount of subscription being $480. The
stock was to consist of 96 shares of the par value of $5
each. Before the articles of incorporation were prepared,
the subscribers seem to have obtained a right of way along
the turnpike between the two towns, purchased and erect-
ed poles thereon, and sufficient wire and insulators to
complete that part of the proposed line. At this stage
of their organization, they appointed nine of their num-
ber a special committee to prepare the proposed articles
of incorporation. This committee seems to have been un-
able to agree as to the articles, and, as a result, four of
them refused to go on with the organization, and reported
back to the subscribers, who agreed with the minority of
the committee. The remaining five prepared articles of
incorporation under the name and style of the "Mt. Carmel
Telephone Company," which they signed and acknowledged,
had recorded, as by law required, paid to the State the

organization tax due, and fixed a time—some three months off—for the purpose of electing directors. The thirty-one subscribers repudiating the action of the five members of the committee had articles of incorporation prepared, the name and style of which was the "Mt. Carmel & Flemingsburg Telephone Company," which they acknowledged and subscribed, as by law required, elected directors and officers, and were proceeding to carry into effect, so far as they could, the original contract between the subscribers. These latter had possession of the original subscription list and money paid in, and other property, including the wire, insulators, etc. Deeming themselves the original company, the five subscribers who had incorporated themselves as the Mt. Carmel Telephone Company instituted this action against the thirty-one subscribers incorporated under the name and style of the Mt. Carmel & Flemingsburg Telephone Company, to recover possession of the personal property held by them as before stated; and the question presented by this record is the mutual rights of the respective parties to this property.

The subscribers for the stock of a proposed corporation, before they are incorporated, are partners in the business which they have in hand. Cincinnati Cooperage Company v. Bate, 96 Ky., 356, 16 R., 626, 26 S. W., 538, 49 Am. St. Rep., 300, and Warring v. Arthur, 98 Ky., 34, 17 R., 605, 32 S. W., 221. The committee of subscribers appointed to prepare the articles of incorporation were merely the agents of the larger body for the purpose for which they were appointed, and it is an elementary doctrine of agency that the principal may at any time, due regard being had to the rights of third persons, withdraw the authority of the agent. Although this committee were authorized to prepare, for the majority, articles of incorporation, it was not obliga-

tory upon the latter to accept or agree to them, and, the principals in this case having refused to sign and acknowledge the articles prepared, this, in law, amounted to a repudiation of the action of the agents. The fact that a majority of the agents saw proper to adopt their own work, and sign and acknowledge the articles prepared by themselves, did not incorporate, or bind the principals, or entitle the corporation so created to the property of the original partners who refused to incorporate with them. After refusing to ratify the work of their agents, the majority of the subscribers incorporated themselves by signing and acknowledging other articles under the name and style of the Mt. Carmel & Flemingsburg Telephone Company, and this corporation became the ·owner of the assets of the partnership. In a partnership composed of numerous individuals bound loosely together by subscription to the stock of a proposed corporation, for all the purposes of the organization, a majority must have the right of control so long as they act within the purview of the contract of subscription; and it would be an anomalous proposition ·if such a body, having appointed a committee of their number as agents to prepare articles of incorporation, should find themselves irrevocably bound to agree to any articles which their agents might see fit to prepare; or of having the alternative presented to them either of adopting the unacceptable articles or of losing all the property belonging to the partnership, provided the agents had the temerity to organize themselves under the rejected articles and to claim the property of the partnership. And yet this is the very proposition which appellant is here seeking to maintain.

Counsel for both litigants have discussed at great length the question as to what point in the process of organization

an action may be maintained by the corporation. The de-, cision of that question does not seem to us necessarily presented by this record. Conceding the appellant to be a properly organized corporation, and therefore to be empowered to maintain any action involving its property rights, the facts herein recited are admitted in the pleadings, and show that the plaintiff (appellant) had no right to the property it sought to recover. This belonged. to the partners, and, as a large majority of these organized themselves into the defendant (appellee) company, the title thereto became invested in it. One partner can not maintain detinue for the recovery of the partnership assets from his partners.

The trial judge correctly sustained the demurrer of appellee and dismissed appellant's petition, and this judgment is affirmed.