## Holcomb et al. v. Holcomb et al.

(Decided May 10, 1932.)

756

STEPHEN COMBS, JR., and D. I. DAY for appellants.

W. H. LEWIS and HAWK & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This action of trespass to try title by Minago Holcomb and others against O. G. Holcomb, Jr., and others, resulted in a verdict and judgment for plaintiffs in the sum of $150. The defendants appeal.

Prior to the year 1858, Henderson Holcomb, Sr., owned a large tract of land in Letcher county. In 1866 he conveyed a portion of his land to his sons, Oliver G. Holcomb, Sr., Hiram W. Holcomb, and Jordan Holcomb, by deed which was duly recorded in the Letcher county clerk's office on July 10, 1868. In 1880 he conveyed the same land to O. G. Holcomb, Sr., by deed duly acknowledged and recorded. Appellees are the widow, sons

and daughters, of Oliver G. Holcomb, Sr. It further appears that Henderson Holcomb, Sr., executed to his son, Henderson Holcomb, Jr., two deeds, one dated March 25, 1858, and the other dated February 16, 1888. Henderson Holcomb, Jr., conveyed to his son, O. G. Holcomb, Jr., the tract of land. From this it will be seen that appellees and appellant O. G. Holcomb, Jr., both claim title from their grandfather, Henderson Holcomb, Sr.

The two tracts claimed by appellees and by appellant O. G. Holcomb adjoin, and of controlling importance is the location of the call in the deed from Henderson Holcomb, Sr., to Henderson Holcomb, Jr., reading ''and with the same to a lime stone cliff and with same to east side of the Rollen Branch and down the spur to 2 spruce pines on the south bank of the main Line Fork.'' If located as claimed by appellees their deeds cover the land in dispute. On the other hand, if it be located as claimed by O. G. Holcomb, Jr., it is embraced in the deeds from Henderson Holcomb, Sr., to Henderson Holcomb, Jr.

On the question of the proper location of the disputed line counsel for each side have submitted an elaborate argument. We need not detail the evidence or go further than to say that on the question of location the evidence is conflicting, and, where that is the case, the question is for the jury and not the court. Thurman v. Leach (Ky.), 116 S. W. 300; Louisville Property Co. v. Lawson, 156 Ky. 288, 160 S. W. 1034. We may add, however, that we have carefully considered the evidence and are constrained to the view that it supports the finding of the jury.

In addition to an instruction that nine of the jury agreeing might make a verdict, and a further instruction fixing the measure of damages, the court gave the following instruction:

''If you believe from the evidence that the plaintiffs, or either of them, or their father, O. G. Holcomb, Sr., had been in the actual, adverse possession of the tract of land described in the deed from Henderson Holcomb to Oliver Holcomb, dated February 10th, 1868, or in the deed from Henderson Holcomb to O. G. Holcomb, dated February 11, 1880, introduced in evidence, continuously and uninterruptedly, for as much as fifteen years or more at one

period of time before the trespasses complained of in the petition were committed, claiming the lands described in either of said deeds open and notoriously as their own, adverse to the defendant and all others, to the full extent of the boundaries therein, then the plaintiffs are the owners of said lands; and if you believe from the evidence that either of said deeds cover and embrace the lands from which the timber trees mentioned in the evidence were cut and removed, carried away, broken down and destroyed, and further believe from the evidence that the defendant, O. G. Holcomb, Jr., by himself, agents, licensees or employees entered upon the boundary of land described in either of said deeds and cut down, carried away and converted to his own use and broke down and destroyed the timber trees mentioned in the evidence, you will find for the plaintiffs. Unless you so believe you will find for the defendants.''

The instruction is attacked on the ground that it did not submit to the jury the principal issue in the case, but submitted both the law and the facts. In order to find for plaintiffs (now appellees), it was necessary for the jury to believe that plaintiffs had had adverse possession of the land described in their deeds, and that their deeds covered the land in controversy. It was proper to submit the issue of adverse possession by appellees or their father for the following reason: On February 10, 1866, Henderson Holcomb, Sr., first conveyed to Hiram W. Holcomb, Jordan Holcomb, and Oliver Holcomb, Sr., the father of appellees. By a subsequent deed dated February 11, 1880, he conveyed the same land to Oliver Holcomb, Sr. As two-thirds of the land had already been conveyed to Hiram Holcomb and Jordan Holcomb, the last deed did not pass their title, and the only way that appellees or their father could acquire title as against them was by adverse possession for the requisite period. The execution of the second deed was an attempt by Hiram Holcomb, Sr., to make another division of his land. The evidence shows that Hiram and Jordan acquiesced in the arrangement and accepted other lands, and it cannot be doubted that the evidence was sufficient to show that appellees and their father were in the adverse possession of the land described in

the second deed for a period of more than 40 years, thus making the question one for the jury. As the instruction submitted all the elements of adverse possession, it was not necessary to give an additional instruction defining adverse possession. If their possession was adverse, then the only other question was whether the deeds under which they claim covered the land in controversy. On this question the court might with propriety have submitted merely the location of the disputed line, but, as practically all the evidence was directed to this issue, the question at last was whether the deeds under which appellees claim covered the land from which the timber was cut, and this issue was submitted by language that could not have been misunderstood by the jury. But it is suggested that the court should have given instructions offered by appellant submitting the question whether the disputed line ran as claimed by him, and also the question of adverse possession. As appellant never had actual possession of the land in dispute, his possession depended on whether his deeds covered the land. If covered by appellees' deeds, it was not covered by his deeds. Before the jury could find for appellees under the given instruction, they had to believe that the disputed land was covered by their deeds. Unless they so believed, they were told to find for appellant. The result is that, unless they so believed, they had to find for appellant without being required to find either that his deeds covered the land in controversy or that he had adverse possession of same. In the circumstances, the given instruction was as favorable as the offered instructions.

The further point is made that appellees showed title to only one-third of the land in dispute, and were entitled to recover at most only one-third of the market value of the timber taken, as ruled in Rush v. Cornett, 169 Ky. 714, 185 S. W. 88. The basis of this contention is that the 1880 deed from Henderson Holcomb, Sr., to Oliver Holcomb, Sr., was void in so far as it attempted to convey land which had theretofore been conveyed to Hiram W. Holcomb and Jordan Holcomb, and that therefore appellees showed title only to one-third of the land. This would be true were it not for the fact, as heretofore held, that appellees and Oliver Holcomb, Sr., took possession under their deed of 1880, and held the land therein conveyed adversely to Hiram Holcomb and Jordan Holcomb, and all others for a period of more than 40 years.

There is no merit in the contention that appellees were required to show title from the commonwealth because appellant asserted title to the land, not only through a common grantor, but also through the Mineral Development Company, which in the year 1902 executed to him a quitclaim deed covering the property. We need go no further than to say that, if the deed from the mineral development had any effect on the common grantor rule, appellees were not required to trace their title back to the commonwealth, but could show title as they did by adverse possession. Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. (2d) 1075.

The further point is made that the court erred in limiting the evidential effect of the quitclaim deed from the Mineral Development Company. We do not see that this deed plays an important part in the case. If the deeds under which appellant already held covered the tract in controversy, then the deed from the Mineral Development Company added nothing to his title. On the other hand, if appellant's prior deeds did not cover the disputed tract, then appellant, who was living within his deeded boundary, and had title thereto, could not extend his possession beyond his deeded boundary as against the superior title-holder by procuring a quitclaim deed covering the tract in dispute unless he actually entered upon that tract and held same adversely for the statutory period. Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S. W. 34; Burnett v. Miller, 174 Ky. 91, 191 S. W. 659. This appellant did not do, and the action of the court in admitting the deed only as evidence of appellant's claim, and not as evidence of the extent of his possession, was not reversible error.

We do not find any prejudicial error in the admission or rejection of evidence.

Judgment affirmed.